| | |
|---|---|
| FERRARI FINANCIAL SERVICES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RM BPO CONSULTING LLC, a<br>Massachusetts limited liability company;<br>RAJU SHARMA, an individual,<br><br>Defendants. | **CASE NUMBER:**<br>1:25-cv-11733-ADB |

**PLAINTIFF FERRARI FINANCIAL SERVICES, INC'S**
**REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES AND SUPPLEMENTAL**
**JUDGMENT – LEAVE TO FILE GRANTED ON MARCH 4, 2026**

Plaintiff Ferrari Financial Services, Inc. ("FFS") respectfully submits this Reply in support of its Motion for Attorney Fees and Supplemental Judgment (ECF 30, "Motion"). to address deficiencies in the Opposition (ECF 33, "Opposition") filed by defaulted and unrepresented Defendant Raju Sharma.

**I.     DEFENDANT'S OPPOSITION IS LEGALLY INCORRECT**

   **A.     The Fee and Cost Award Is Not Discretionary.**

Defendant Sharma asserts that an attorney's fee award is *discretionary*, citing 42 U.S.C. § 1988. (Opp'n at 1). The basis for FFS's fee request in this case is not 42 U.S.C. § 1988. Therefore, Defendant Sharma's assertion of applicability in this matter is legally incorrect. Other than this inapplicable law, Defendant Sharma cites no legal authority to support his Opposition.

As FFS's Motion states at page 1, the basis of the Motion is "pursuant to Fed. R. Civ. P. 54(d) *and pursuant to the express terms of the Contract*." (emphasis added). FFS further explained and cited the exact section of the Contract, which was attached to the Verified Complaint:

Per the explicit terms of the Contract, Defendants agreed that upon

default[1], FFS was entitled to "reasonable costs to collect what [Defendant] owe[s], including attorney fees [and] court costs[.]" (Compl., Ex. A, at p. 3, § 3(c).)

Motion at 2-3. Therefore, contrary to Defendant Sharma's argument, an attorney fee and cost award in FFS's favor is not discretionary.

**B.      The Fee and Cost Award Is Not Limited to This Civil Action Itself, but All of FFS's Attorneys' Efforts to Collect What Defendants Owe FFS.**

Relatedly, the fees and costs that contractually *must* be awarded to FFS are not limited to those directly incurred in this lawsuit; they include attorney fees and costs incurred by FFS in furtherance of all efforts to recover the vehicle at issue and all balances due and owing from Defendants. It is true that many statute-based fee awards that the Court routinely encounters (like ERISA or civil rights cases, for example) could ordinarily be construed to limit fees and costs to those incurred only in the prosecution of the lawsuit itself. However, this is not one of those cases, and the Court must award *all* of the "reasonable costs to collect what [Defendants] owe, including attorney fees [and] court costs." Compl., Ex. A. at p. 3, § 3(c). Indeed, it would be unusual and perhaps *not* reasonable for an attorney to immediately launch into a formal lawsuit as the first effort to recover what the debtor owes, and filing this lawsuit certainly was not FFS's attorneys' first step here. As one example, Exhibit B of the Verified Complaint shows the April 15, 2025, attorney letter (signed by attorney Wittenberg and cc'd to attorney Lewis) sent to Defendants as part of FFS's reasonable efforts to recover what Defendants owe. This reasonable effort was undertaken to hopefully secure the amounts due and owing under the Contract without needing to incur the additional expenses of initiating and prosecuting a formal lawsuit.

Defendant Sharma admits in his Opposition that "the United States Attorney's Office for

---

[1] "Default," here, refers to Defendants' default on their obligations under the Contract, not their procedural default in this case.

the District of Massachusetts seized the vehicle in question in February 2025, prior to the instant litigation, as part of a criminal prosecution against Mr. Sharma." Opp'n at 2. But those circumstances[2] are Defendant Sharma's fault, and do not provide a valid excuse for why he has not paid FFS and taken affirmative steps to have the vehicle returned to its rightful owner, FFS.

But what Defendant Sharma's admissions do make clear is that, *due to his own alleged criminal conduct* that compromised a high-value asset (the vehicle) to which he knew FFS has a valid legal claim, this case is not a run-of-the-mill collections and repossession case. Because this is not a routine collection/repossession case, FFS was justified in having its attorneys spend the reasonable time they spent both before and during this litigation to collect what Defendants owe to FFS. Those efforts are shown in the supporting declaration and exhibit submitted with FFS's Motion.

## II.   **DEFENDANT'S OPPOSITION IS FACTUALLY BASELESS**

### A.   **Defendant Sharma's Unsworn Statements Lack Evidentiary Support and Actually Reinforce the Reasonableness of FFS's Fee and Cost Request.**

Local Rule 7.1(b)(2) states, "Affidavits and other documents setting forth or evidencing facts on which the opposition is based shall be filed with the opposition." Here, Defendant Sharma's Opposition contains no affidavit or declaration under penalty of perjury, therefore it contains no actual evidence of any asserted facts. For example, in footnote 1 of the Opposition, Defendant Sharma asserts, without evidentiary support, information about a second luxury vehicle (not part of this case) that the federal government allegedly also seized due to his alleged criminal conduct.[3] He alleges, with no factual support, that another lienholder supposedly negotiated a deal with the federal government. *Id.*

---

[2] The seizure of the vehicle by the United States Department of Justice constituted an additional default on the Contract by Defendants.  See Contract, ECF No. 1, Exhibit A, § 2.
[3] This newly alleged fact that Defendant Sharma apparently has or had multiple luxury vehicles

First, the Court should not consider this at all in favor of Defendants because these assertions are not supported by an affidavit or unsworn declaration under penalty of perjury. *See, e.g.,* 28 U.S.C. § 1746.

Second, Defendant Sharma's statements are factually devoid of any useful detail. He does not state, for example, (1) how much money the federal government was able to recover by selling the other asset; (2) whether that recovery was enough to satisfy the amount allegedly owed to that lienholder (in all likelihood it was not, but if that sale *did* net an excess to Defendant Sharma he fails to explain why he has not tendered those funds to satisfy part of his debt to FFS); (3) whether the sale could have netted a higher amount if the government would have allowed the lienholder to conduct the sale; or (4) how much in attorneys' fees the other lienholder incurred in that whole process. Thus, Defendant Sharma's assertion that "FFS could have done the same without occurring [*sic*] any legal costs at all" (Opp'n n. 1) is factually unsupported by admissible evidence and devoid of any details. On the other hand, this same admission in footnote 1 simply confirms that this is a unique case that involves complicated civil seizure procedures that include the uncertainty of negotiations with the federal government, which takes significant time and resources, including attorneys' fees, reasonably being incurred by FFS to collect what Defendants owe.

Likewise, there is no factual support for Defendant Sharma's assertion that "the party with possession of the vehicle was willing to negotiate sale of the vehicle." Nor does the same

---

begs the question as to why he could not have timely repaid his debts to FFS, and supports that the extensive collection efforts by FFS were reasonable and justified. While the Court should not consider this as evidence in Defendant Sharma's favor because it is not in an affidavit or declaration under penalty of perjury, FFS respectfully submits that FFS is permitted to offer the same statements *against* Defendant Sharma as statements by a party-opponent. *See* Fed. R. Evid. 801(d)(2)(A).

inadmissible assertion support that—even if the federal government sold the vehicle—it could have been done in a manner that recovered the full amount Defendant Sharma owed here, and FFS would have to continue expending further efforts to collect what Defendants owe.

Contrary to Defendant Sharma's unsupported and wrong factual assertions, FFS's submissions with its Motion show FFS's significant efforts, which were reasonable, not duplicative, and necessary for the purposes of trying to collect what Defendants owe. All these facts confirm this is an unusual collection case and reinforce that FFS's fee request is reasonable.

B.     **Defendant Sharma's Assertions About Reasonableness Are Conclusory and Incorrect.**

Defendant Sharma asserts that the fees incurred are not reasonable, but he does not provide any support for that conclusory statement. Because of the lack of support, there are no specific assertions here for FFS to rebut. Thus, the Court should disregard entirely Defendant Sharma's conclusory assertion.

For example, Defendant Sharma's statement about reasonable hourly rates is unsupported by any contrary evidence of reasonable rates, and he does not rebut the factual support and decisional law supporting the rates at issue here, as FFS's Motion presented in detail. He also gives no specific examples to support that "the number of hours claimed is unreasonable." He is not an attorney and has given no personal knowledge basis for knowing how many hours it takes to do the work FFS's attorneys have performed.

As to Defendant Sharma's assertion, unsupported by evidence that "the fees requested are disproportionate to the results achieved in this case," FFS disagrees and has clearly demonstrated otherwise. The Court entered a judgment of approximately $300,000, so the fee sought is less than one-third of the "results achieved," if measured in that way. Furthermore, the lodestar method is the preferred method of calculating reasonable fees, not an arbitrary percentage/proportion of the

"results achieved." *See, e.g., ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560-ADB, 2024 WL 7002014, at *2 (D. Mass. Mar. 6, 2024), *aff'd,* No. 2024-1649, 2026 WL 411999 (Fed. Cir. Feb. 13, 2026) (lodestar approach is the appropriate starting point for a fee award, citing cases).

As another example, Defendant Sharma asserts that there were unnecessarily duplicative efforts, unnecessary tasks, or excessive time spent on routine matters, but he provides no specifics to support that statement, and as a result, the Court should reject these statements entirely.

Finally, Defendant Sharma's baseless assertion that FFS "failed to adequately document the time spent or the necessity of the work performed" is directly contradicted by FFS's detailed submissions with its Motion.

**C.      Defendants' Own Conduct Made This Case More Expensive.**

Finally, Defendant Sharma has signed a pleading, the Opposition, finally admitting that his address is "5 Saw Mill Pond Road, Sharon, MA 02067," which is where FFS served him, through his spouse. Given that service was proper, and Defendant did not cooperate in admitting or disclosing that this was his appropriate address of residence earlier in the case, FFS respectfully submits that its initial motion for default judgment—which was denied because the Court was unsure if service at that address was sufficient—*was* necessary and *was* legally sufficient and based on actual evidence that he was served at his place of residence. *See, e.g.,*, Verified Complaint, Ex. A at 1, showing Defendants' address as "5 Saw Mill Pond Road, Sharon, MA 02067-1260." And, of course, the renewed motion for default judgement was also necessary, because the Court reasonably wanted additional assurances that it had jurisdiction, which it obviously does—as made sure by Defendant Sharma's belated admission that his residence is where FFS said it was all along.

In addition, orders of default have been entered against Defendants in this case, and

therefore, they are procedurally are prohibited from disputing any of the factual allegations in the Complaint, including, for example, that "[n]otwithstanding FFS's right to possession, Defendants have failed to deliver possession of the Vehicle to FFS and have converted the Vehicle for their own use and benefit," and "[d]espite demand, Defendants have failed and refused to surrender the converted Vehicle, or the proceeds therefrom, to FFS." Thus, the Court should not consider Defendants' newly asserted, baseless excuses about how he allegedly lost possession of the Vehicle at issue (which itself was act of default of his agreement with FFS).

Additionally, Defendants could have resolved this case more quickly and inexpensively by simply tendering the payoff amount stated in the April 15, 2025, attorney demand letter, which was attached as Exhibit B to the Verified Complaint. As Defendants cannot dispute:

> 14. On April 15, 2025, counsel for FFS sent a demand letter to Defendant Sharma. This letter indicated that the Contract was in default, and that Defendant Sharma should tender payment in the amount of $218,758.97, plus the per diem rate of $53.05 for every day after April 14, 2025, no later than April 21, 2025. A true and correct copy of the April 15, 2025 correspondence is attached hereto as **Exhibit B** and is incorporated herein by this reference.
>
> 15. As of the filing of this Complaint, Defendants have failed to tender the payoff amount or surrender the Vehicle.
>
> 16. Defendants remain in default of their obligations under the Contract. As of May 30, 2025, the total payoff amount for the Contract was $221,214.27 excluding accruing fees, costs and charges. Charges, interest, and fees continue to accrue.

Verified Complaint (ECF 1) ¶¶ 14-16. If Defendants—who are evidently wealthy enough to have simultaneously possessed *multiple* luxury vehicles—would have simply timely tendered the payoff amount of $218,758.97 as demanded in the April 15, 2025 letter, FFS would not have been forced to incur significant additional collection costs, and Defendants could have saved themselves from a significant judgment and attorneys' fee and cost liability. It was Defendants' own decision to fail to do so.

Finally, FFS would not have been forced to prepare this Reply if Defendant Sharma had not made the choice to file a legally and factually unsupported and incorrect Opposition.

The Court should end this contract dispute by holding Defendants to the consequences of the actions that they chose to take in breaching a contract they voluntarily entered and forcing FFS to hire attorneys and incur reasonable attorneys' fees and costs "to collect" what Defendants owe to FFS.

## III.     **CONCLUSION**

For the foregoing reasons, FFS respectfully requests that the Court grant its Motion for an award of $92,930.80 in fees and $853.20 in costs (in addition to the taxable costs already awarded), for a total of $93,784.00.

DATED March 6, 2026.

SNELL & WILMER L.L.P.

*/s/ Daniel S. Wittenberg*

Daniel S. Wittenberg *(Pro Hac Vice)*
675 15th St., Ste. 2500
Denver, CO 80202
303-634-2000
dwittenberg@swlaw.com

Jacob C. Jones (BBO # 714089)
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
602-382-6000
jcjones@swlaw.com

*Attorneys for Plaintiff Ferrari Financial Services, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on March 6, 2026, Plaintiff's Reply in Support of Motion for Attorney Fees and Supplemental Judgment and supporting declaration were served upon Defendant Raju Sharma via U.S. Mail, postage prepaid, to the last known residential address, and upon Defendant RM BPO Consulting LLC via mail to its last known counsel, with a courtesy copy via email, as follows:

Joshua Sabert Lowther, Esq.
**LOWTHER | WALKER LLC**
101 Marietta Street, NW, Suite 3650, Atlanta, GA 30303
O 404.496.4052 | M 912.596.2935 | F 866.819.7859
jlowther@lowtherwalker.com

Raju Sharma
5 Saw Mill Pond Road
Sharon, MA 02067

DATED March 6, 2026.

*/s/ Stephany Mitchell*

9
